THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DARRYL TAYBORN, Defendant-Appellant.

First District (1st Division)   No. 1—92—1370

Opinion filed June 14, 1993.—Rehearing denied December 6, 1993.

Rita A. Fry, Public Defender, of Chicago (Tina Liebling, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Laura L. Morrison, and Rogelio Pena, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAMPBELL delivered the opinion of the court:

Following a jury trial, defendant, Darryl Tayborn, was found guilty of attempted first degree murder, aggravated battery with a firearm, and aggravated discharge of a firearm, and sentenced to concurrent terms of 30 years for attempted murder, 20 years for aggravated battery with a firearm, and 15 years for aggravated discharge of a firearm. On appeal, defendant contends that: (1) the trial court improperly allowed evidence of other crimes at trial; (2) the trial court improperly limited cross-examination of an identification witness; (3) the trial court improperly limited cross-examination of an evidence technician; (4) the trial court erred in allowing the testimony of a police officer as to the substance of the statement he took from the identification witness; and (5) his multiple convictions were improper where he committed only one physical act. For the following reasons, we affirm the judgment of the trial court, but vacate defendant's conviction for aggravated battery with a firearm.

The following facts are relevant to this appeal. Prior to trial, the trial court denied defendant's motion *in limine* to bar the State from using evidence of other crimes at trial.

At trial, Eric Murchinson testified that on June 28, 1991, he was living at 11426 Calumet, Chicago, with his mother, Andrea Harris, his stepfather, Percel Harris, and his two younger brothers, Johnny and Tony Hatfield. At the time of trial, Murchinson had been employed in the shipping warehouse of the Avon Products factory outlet for nine months and was on probation for a conviction for possession of a stolen motor vehicle.

On June 25, 1991, a fan and a radio were taken from Murchinson's home. Murchinson learned that Matthew Tayborn, defendant's brother, had taken the items, and on June 26, 1991, at 8 or 9 p.m., Murchinson saw Matthew Tayborn in the alley around the corner from his house. Murchinson exchanged words with Matthew and a scuffle ensued between them. The two men engaged in a fistfight for about five minutes, then Matthew ran away. After the fight, Murchinson went across the street to visit his friend Devon Forest. From Forest's house, Murchinson saw defendant run up the street toward his (Murchinson's) house, and run up to his porch. At that time, defendant was with another young man whose name Murchinson did not know.

Defendant picked up the chairs on Murchinson's porch and started to break Murchinson's front windows with the chairs. Murchinson ran across the street to his house and approached defendant. When defendant saw Murchinson, he stated, "Is that the one?" Then the other man pulled a gun out of his waist and tried to shoot Murchinson, firing the gun five times. Murchinson ran southbound, around the corner, to a friend's house on 114th Street and Forest. Murchinson stated that he did not call the police because he lives in a rough neighborhood and the police would not have helped him. After the incident, Murchinson and his family boarded up the windows and spent the night at his grandmother's house.

Murchinson stayed at his grandmother's house until approximately 5 p.m. the following day, when he met his brother, Johnny Hatfield, and they went to Michelle McGee's house, at 114th and State. They stayed at McGee's house until approximately 1 a.m. and then proceeded home. En route, Murchinson observed a group of about 10 men standing on the corner of 114th and Calumet, across the street from his house. Murchinson recognized defendant in the group.

Murchinson and Hatfield went into their house and upstairs to their bedroom. Murchinson looked out the window for about two minutes and saw four of the men cross the street toward his house. The four men went to the back of Murchinson's house, then came around the side of the house to the front and approached the front porch. Murchinson saw the men take guns from their waists; three men were carrying "Tech-9" pistols, and the other person had a single-gauge shotgun. Defendant was carrying a Tech-9. Murchinson ran downstairs to warn his family. He peeked through the curtains of the front door and saw the men trying to break the door lock. Murchinson crawled from the front door to the dining room. Suddenly, he heard one of the men tell another to bust down the door, and the men started shooting. They shot through the boarded-up windows, and continued for about 15 seconds, firing approximately 60 shots all together. Hatfield was hit in his side when a bullet came through the living room wall.

The police arrived approximately 20 to 30 minutes after the shooting. Murchinson told the police that defendant was one of the shooters and gave the police a description. About an hour later, Murchinson identified defendant in police custody.

Johnny Hatfield testified that on June 26, 1991, he came home at 8 or 9 p.m. to find the front windows of his house broken. The police arrived, and Hatfield talked to them. Subsequently, Hatfield and his mother boarded up the windows. Hatfield found two .38-caliber shell

casings outside around the front porch area at the bottom of the stairs. He picked them up, brought them inside, and placed them on the dining room table.

Hatfield returned to his house the next morning at 9 a.m. and noticed that the board on the front window had been kicked in. When he entered the house, he noticed that the color television set was missing. He replaced the window board and his mother called the police. He stayed at the house until approximately noon and then returned to his grandmother's house.

Hatfield testified corroborating Murchinson's testimony as to the events on the evening of June 26 and the shooting in the early morning hours of June 27, 1991. Hatfield was taken to the hospital after the shooting and treated for a gunshot wound. The bullet removed from his side was a .9-millimeter.

Officer John R. Butler, a Chicago police department evidence technician, testified that on June 28, 1991, at 1:50 a.m. he investigated the crime scene at 11426 South Calumet. Officer Butler found the front door and windows broken and boarded up, and noticed bullet holes in the boards. He recovered a fired bullet and eight .9-millimeter cartridge cases from the front porch. Officer Butler also recovered two .32-caliber automatic bullets that had not been fired.

Officer Butler found that some of the boarding from the front windows had been knocked into the living room. He noticed firearms damage to furniture and approximately six bullet holes in the walls. He recovered additional fired bullets from the shelf of a table next to the couch and inside the coffee table. In the dining room, he observed damage to furniture and bullet holes in the walls, and firearms cartridges on the floor. He recovered two spent cartridges and two .38 special "plus P" caliber rounds from underneath the dining room table.

Chicago police officer David Edison testified that on June 28, 1991, at 1:16 a.m. he and his partner, Alma Runsford, investigated the shooting at 11426 South Calumet. When he arrived at the scene, he noticed a crowd of at least 10 people in front of the house. Officer Edison walked up to the front porch and saw numerous expended .9-millimeter shells. As he entered the house, he saw the same type of shell on the floor in the front room, bullet holes in the walls, and spent bullets on the floor. He found Johnny Hatfield sitting on the dining room floor and saw that he had a bullet wound. Officer Edison called for an ambulance and the mobile crime lab.

Officer Edison then questioned Murchinson. Murchinson told Officer Edison that he and Hatfield were walking home at 1 a.m., and as

they approached their residence, they noticed a large crowd of black males across the street. Murchinson and Hatfield entered the house. Murchinson said he was suspicious of the group, so he went upstairs and looked out of the second-floor window. At that point, Murchinson saw four men crossing the street towards his porch. Murchinson then saw three of the men pull out "Tech-9s," .9-millimeter semi-automatic pistols, and the fourth man pull out a shotgun. Murchinson identified defendant as one of the men who pulled out a gun as he crossed the street toward Murchinson's house. Murchinson also told Officer Edison about the conflict that had arisen between him and Matthew Tayborn.

Officer Terrence Gibbons testified that on June 28, 1991, at approximately 1:15 a.m. he and his partner, Officer Fred Benson, responded to a call regarding gunshots fired at 11426 South Calumet. When they arrived, Officer Edison was already there, and a crowd of people had gathered on the sidewalk. Officers Gibbons and Benson found shell casings and bullet holes on the front porch. They entered the house and found Hatfield lying on the dining room floor, and also observed bullet holes in the interior walls of the house and in some of the furniture. Gibbons interviewed Murchinson and his mother at the scene and learned that the offenders ran three or four doors north, to hide in an abandoned building, and that they were armed with Tech-9 pistols, a type of machine gun. The officers went to the abandoned house and searched the grounds.

After about 20 minutes, the officers returned to 11426 Calumet. The officers spoke to Murchinson and his mother again and learned defendant's name, address and physical description. The officers then went to 11421 Forest and found defendant. The officers searched defendant and took him back to the scene. At the scene, defendant was identified as the offender in the shooting.

Andrea Harris, Murchinson and Hatfield's mother, testified on behalf of the State that on June 26, 1991, she came home at approximately 8 p.m. and found all of the front windows of her house broken. She boarded up the windows and then went to stay at her mother's house. She returned to her house the next morning at 9 a.m. and found her television missing. The windows that she had boarded were kicked down, and the front door was open. Her stereo had been taken apart and it was standing by the front door. She and Hatfield reboarded the windows and she called the police.

At 12:45 a.m. on June 27, Harris heard Murchinson and Hatfield come in the front door. She went to the kitchen to meet Hatfield, and Murchinson went upstairs. She then looked out of the front door and

saw a man ride by on a bicycle. She also noticed a group of men standing across the street. She yelled upstairs to Murchinson, asking him if something was wrong, and he said no. Harris then saw the same person ride past the house on a bicycle again, and this time another person was with him, an individual she recognized as Derrick. The bicycle rider dismounted the bicycle and gave the bicycle to Derrick. They then stood for a few seconds in front of the house, at the bottom of the porch steps. Harris began to walk back toward the kitchen, when Murchinson yelled "get down, get down, they have Tech-9s." Harris then saw shadows on the porch, the board was kicked in and she heard gunfire. She could see the flashes of the guns in the mirror on the wall and could hear the bullets hitting different things. Hatfield yelled that he was hit, Harris turned on the light and saw that there was blood everywhere and Murchinson was holding Hatfield. The neighbors came over, and then the police arrived. Harris spoke with police officers, then rode in an ambulance to the hospital with her son.

The State then rested, and the trial court denied defendant's motion for a directed verdict.

Ravin Houskins, a Cook County Department of Corrections social worker, testified on behalf of the defense that she lives at 11440 South Forest, and that Calumet Street is east of her house. On June 28, 1991, at approximately 1 a.m., Houskins was sitting on her front porch waiting for her daughter to get home. She saw defendant and Derrick pushing bikes in the middle of the street. After they walked by, she heard gunshots coming from a northeasterly direction. When she looked over, she saw defendant and Derrick still standing in the street. On cross-examination, Harris admitted that she was not sure of the exact time she saw defendant and Derrick in the street. Harris stated that she sat on her porch until 1:25 when she went to pick up her daughter. After Harris' testimony, the defense rested.

Following closing arguments, the jury found defendant guilty of attempted first degree murder, aggravated battery with a firearm, and aggravated discharge of a firearm. The trial court sentenced defendant to concurrent prison terms of 30 years for the attempted first degree murder conviction, 20 years for the aggravated battery with a firearm, and 15 years for aggravated discharge of a firearm. Defendant's timely appeal followed.

Initially, defendant contends that the trial court erred in allowing evidence of other crimes at trial. Defendant cites the following testimony as inadmissible evidence of crimes for which he was not on trial:

(1) Murchinson's testimony that his house was burglarized on June 25, 1991, and that he believed defendant's brother, Matthew Tayborn, was the perpetrator;

(2) Murchinson's testimony that he entered into a fight with Matthew Tayborn because of his belief that Matthew Tayborn was the perpetrator of the above alleged burglary;

(3) Murchinson's testimony that he saw defendant and another individual breaking the front windows of his home and that when he tried to stop the damage the unknown person took out a gun and fired at Murchinson after defendant identified Murchinson; and

(4) testimony of Murchinson and Harris as to the burglary of their home by unknown persons after defendant had rebroken the boarded-up windows.

Defendant argues that the above testimony was inadmissible as irrelevant and prejudicial.

Evidence of crimes for which a defendant is not on trial is inadmissible if relevant merely to establish his propensity to commit crime. (*People v. Illgen* (1991), 145 Ill. 2d 353, 583 N.E.2d 515; *People v. Richardson* (1988), 123 Ill. 2d 322, 338-39, 528 N.E.2d 612.) However, other crimes evidence is admissible if relevant for any purpose other than to show the propensity to commit crime, such as *modus operandi*, intent, identification, motive or absence of mistake. (*People v. McKibbins* (1983), 96 Ill. 2d 176, 182, 449 N.E.2d 821.) The admissibility of evidence at trial is within the discretion of the trial court and will not be reversed on appeal absent a clear abuse of discretion. *Illgen*, 145 Ill. 2d at 364, 583 N.E.2d at 519.

■ In the present case, the record shows that the above evidence tends to establish defendant's motive and intent to harm Murchinson for having fought with his brother, Matthew. The evidence that Murchinson engaged in a fight with Matthew, and then later that same night defendant and another individual broke the front windows of Murchinson's house and shot at Murchinson, indicates defendant's hostility and motive to harm Murchinson. Defendant's motive is further indicated by testimony that the window boards were rebroken after they were reboarded. In addition, the evidence tends to explain the sequence of events involving the crimes charged. The record shows that the evidence was relevant for a purpose other than to show the defendant's propensity to commit crime and was therefore proper.

Next, defendant contends that the trial court improperly limited defense counsel's cross-examination of Eric Murchinson. Defendant

elicited testimony from Murchinson regarding his conviction for possession of a stolen motor vehicle and his sentence of probation. However, the trial court sustained the prosecutor's objections when defense counsel asked Murchinson if he had any outstanding warrants against him. Defense counsel attempted to show that Murchinson's fight with Matthew Tayborn indicated a possible violation of Murchinson's probation. However, Murchinson denied that any warrants were outstanding against him.

The fact that a witness has been arrested or charged with a crime may be shown or inquired into on cross-examination, where it would reasonably tend to show that his testimony might be influenced by interest, bias or a motive to testify falsely. (*People v. Triplett* (1985), 108 Ill. 2d 463, 476, 485 N.E.2d 9.) However, the evidence must give rise to an inference that the witness has something to gain or lose by his testimony and therefore must not be remote or uncertain. *Triplett*, 108 Ill. 2d at 481-82.

In the present case, the record shows that Murchinson was on probation, but there is no evidence that a violation of probation was pending. The record does not reveal that Murchinson had any warrants pending against him for an alleged battery of Matthew Tayborn. Thus, the police had nothing to offer Murchinson, and questions about violations of his probation would have revealed nothing of value. See *People v. Schnurr* (1990), 206 Ill. App. 3d 522, 564 N.E.2d 1336.

Defendant further contends that the trial court improperly precluded Officer Butler from testifying that .38-caliber and .38-caliber "plus P" cartridges found in the dining room could not have been fired from a .9-millimeter automatic pistol. Defendant argues that, as an expert witness, Officer Butler's testimony would have revealed that the two .38-caliber cartridges found in the dining room were fired from inside the house and not by the "Tech-9" used by defendant.

Whether a witness is an expert is within the trial court's discretion, and the qualification of a witness as an expert will not be disturbed on appeal without a showing of an abuse of discretion on the part of the trial court. (*People v. Puhl* (1991), 211 Ill. App. 3d 457, 570 N.E.2d 447.) Expert testimony is properly admissible when the subject matter is sufficiently beyond the common experience of ordinary lay individuals such that only persons of a particular skill or experience are capable of forming a judgment based on the facts presented. *People v. Masor* (1991), 218 Ill. App. 3d 884, 578 N.E.2d 1176.

■ In the present case, Officer Butler testified as an evidence technician, not as a firearms expert. On cross-examination, defense counsel attempted to show that Officer Butler had the expertise to determine whether a .38-caliber bullet could have been fired from a .9-millimeter pistol. The trial court allowed defense counsel to attempt to lay a foundation to establish that Officer Butler had the expert knowledge of a firearms expert, but defense counsel was unable to do so. Thus, Officer Butler was never qualified as a firearms expert. Contrary to defendant's assertion, the record does not show that the bullets were fired from inside the house. Rather, it can be inferred from the record that the two .38-caliber cartridges found in the dining room were placed there by Hatfield, who testified that he recovered two .38-caliber cartridges from his porch and brought them into the dining room.

■ Next, defendant contends that the trial court erred in allowing Officer Edison to testify as to what Murchinson said about what occurred at his home. Defendant argues that Officer Edison's testimony was inadmissible hearsay, as a prior consistent statement. The State responds that Officer Edison's testimony was proper as an exception to the hearsay rule and to rebut the inference that Murchinson's testimony was biased.

Section 115—12 of the Code of Criminal Procedure of 1963 provides as follows:

"A statement is not rendered inadmissible by the hearsay rule if (a) the declarant testifies at the trial or hearing, and (b) the declarant is subject to cross-examination concerning the statement, and (c) the statement is one of identification of a person made after perceiving him." (Ill. Rev. Stat. 1991, ch. 38, par. 115—12.)

The record in the present case shows that Murchinson, the declarant of the out-of-court statement, testified at trial and was subject to cross-examination by defense counsel. The record further shows that in his statement, Murchinson identified defendant as one of the men who carried a Tech-9 automatic weapon and shot into Murchinson's home. Thus, Officer Edison's testimony is admissible as an exception to the hearsay rule.

In addition, Officer Edison's testimony is admissible to corroborate Murchinson's testimony on direct examination and to rebut the inference that Murchinson was motivated to testify falsely. Even though a witness may not be corroborated on direct examination by proof of prior statements consistent with his testimony, prior consistent statements are admissible to rebut a charge or an inference that

the witness is motivated to testify falsely or that his testimony is of recent fabrication, and such evidence is admissible to show that he told the same story before the motive came into existence or before the time of the alleged fabrication. *People v. Williams* (1991), 147 Ill. 2d 173, 227, 588 N.E.2d 983.

In the present case, as discussed above, defense counsel attempted to test the veracity of Murchinson's trial testimony on cross-examination by asking him about his probation and inquiring as to alleged warrants that may have led to a violation of that probation. Subsequently, Officer Edison testified as to what Murchinson told him at the scene of the crime. Thus, the testimony of Officer Edison as to what Murchinson told him at the crime scene was proper.

Finally, defendant contends that his multiple convictions are improper because the evidence at trial showed that the charges against him were based on one act. Defendant argues that his convictions for the lesser offenses of aggravated battery with a firearm and aggravated discharge of a firearm must be vacated for this reason. The State concedes that defendant's conviction for aggravated battery with a firearm must be vacated, but argues that defendant's conviction for aggravated discharge of a firearm was proper.

A defendant who commits more than one criminal act in an episode or transaction may be prosecuted for more than one offense unless the charges involve precisely the same physical act. *People v. Segara* (1988), 126 Ill. 2d 70, 533 N.E.2d 802; *People v. Burrell* (1992), 228 Ill. App. 3d 133, 592 N.E.2d 453.

■ Aggravated discharge of a firearm is a complete and distinct offense from attempted first degree murder by statute. Under the Criminal Code, a person commits aggravated discharge of a firearm when he "knowingly [d]ischarges a firearm at or into a building he knows to be occupied and the firearm is discharged from a place or position outside that building." (Ill. Rev. Stat. 1991, ch. 38, par. 24—1.2(1).) By contrast, a person commits an attempt when, with intent to commit a specific offense, such as first degree murder, he does an act which constitutes a substantial step toward the commission of that offense. (Ill. Rev. Stat. 1991, ch. 38, par. 8—4(a).) A person commits first degree murder if, in performing the acts which cause death, "(1) he either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another." (Ill. Rev. Stat. 1991, ch. 38, par. 9—1(a)(1).) Defendant's act of firing a weapon into a building when he knew that Murchinson and his family were inside is distinct from his action of shooting Hatfield, with the intent to kill him. The record re-

veals that numerous bullet casings and bullet holes were found in Murchinson's home, indicating numerous acts of shooting. Therefore, convictions for attempted murder and aggravated discharge of a firearm were proper.

For the above reasons, the judgment of the trial court is affirmed, and defendant's conviction is modified by vacating his conviction for aggravated battery with a firearm.

Affirmed and modified.

MANNING, P.J., and O'CONNOR, J., concur.