THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BRIAN ROBINSON, Defendant-Appellant.

Second District   No. 2—92—0242

Opinion filed September 13, 1993.

G. Joseph Weller and Thomas A. Lilien, both of State Appellate Defender's Office, of Elgin, for appellant.

Michael J. Waller, State's Attorney, of Waukegan, and Nancy W. Owen, of Mattoon (William L. Browers and Norbert J. Goetten, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE INGLIS delivered the opinion of the court:

A jury convicted defendant, Brian Robinson, of six counts of armed violence (Ill. Rev. Stat. 1991, ch. 38, par. 33A–2 (now 720 ILCS 5/33A–2 (West 1992))) and six counts of aggravated discharge of a firearm (Ill. Rev. Stat. 1991, ch. 38, par. 24–1.2(a)(2) (now codified, as amended, at 720 ILCS 5/24–1.2(a)(2) (West 1992))). He was sentenced to concurrent terms of 10 years' imprisonment for each offense. On appeal, defendant raises the following issues: (1) whether the State proved beyond a reasonable doubt that defendant's actions were without legal justification; (2) whether the trial court reversibly erred when refusing to provide defendant with the addresses of the prospective jurors; (3) whether the convictions of six counts of aggravated discharge of a firearm must be vacated pursuant to the one-act-one-crime rule; (4) whether the trial court relied upon improper aggravating factors when sentencing defendant; and (5) whether defendant is entitled to an additional day of credit toward his sentence.

A grand jury indicted defendant of 14 counts of armed violence and 7 counts of aggravated discharge of a firearm for an incident occurring on the border of Waukegan and North Chicago on June 30, 1991. The cause proceeded to trial on December 16, 1991.

The State's first witness was Officer Louis Rodriguez of the Waukegan police department. He testified that at approximately 1:20 a.m. on June 30, 1991, he was patrolling in a squad car when a citizen stopped him and stated that there was going to be a fight between black and Hispanic gang members in the area of 10th Street and Lincoln, including a drive-by shooting. Tenth Street divides Waukegan and North Chicago. Rodriguez testified that shortly after arriving he dispersed a crowd of 15 to 20 Hispanic individuals. The individuals were not wearing gang-related attire. Some individuals walked toward 10th and Prescott, one block east. He then heard three shotgun blasts come from 10th Street and Prescott. He observed a group of male Hispanics running toward him and that three males were bleeding from their arms, legs and chest area. Rodriguez did not see one

group of individuals running toward the other group prior to the shotgun blasts. Rodriguez further testified that he and other officers dispersed a crowd of approximately 60 to 100 people on each side of 10th Street. He took one of the injured males, Guillermo Macias, to the hospital.

Allen Jordan testified that he was at the corner of 10th and Lincoln at about 1:30 a.m. on June 30, 1991. He was there with friends, and a group of individuals on the North Chicago side of 10th Street was throwing bottles. He moved toward Prescott, and while he was standing there, a black sports car pulled up, the doors opened and an individual started shooting. Jordan testified that he heard two shots and then ran toward his car. Jordan was shot in the right lower thigh. Jordan testified that prior to the shooting, he saw possibly three individuals running toward the car. On cross-examination, Jordan acknowledged that he is familiar with gangs in the area and that he associates with gang members, although he is not a gang member. He also stated on cross-examination that he heard three shotgun blasts and that he heard a pistol shot in addition to the shotgun blasts.

Humberto Magano testified he has never been a gang member but was on probation for mob action. On June 30, he was with friends at 10th and Prescott at approximately 1:30 a.m. He had just left a bar and was talking with friends when they were "sprayed" with bullets. He was shot in the legs, arm and neck. Magano saw no cars drive into the area. Officer Rodriguez took him to the hospital. On cross-examination, Magano testified that he heard a pistol shot around the same time he was shot.

Michael Edwards testified that he used to be a member of the Gangster Disciples street gang and was on probation for unlawful delivery of a controlled substance. He was a gang member on June 30, 1991. At 1:30 a.m., he had left a party at the Puerto Rican Society and was standing at 10th and Prescott. Individuals from across 10th Street were yelling gang names and "other gang stuff." Edwards testified that he crossed to the North Chicago side of 10th Street and told that group that "Nobody want no static." He returned to the Waukegan side of 10th Street and someone yelled "That's Mike-Mike." Edwards looked up and saw a gun pointed toward him. A friend pushed Edwards out of the way when shots were fired. Edwards testified that he was not shot. Edwards testified that he heard three or four shots. Edwards could not identify the shooter in court; however, Edwards identified defendant as the shooter when he spoke with the police after the incident. Edwards further testified on cross-examination that he did not hear a pistol shot.

Hector Ramos testified that he was at 10th and Prescott on the Waukegan side on June 30, 1991, at about 1:30 a.m. He also had attended the party at the Puerto Rican Society. Ramos was standing there just after a fight had occurred down the street. He testified that he heard two or three shots but did not see the shooter. Ramos heard no other shots. At the hospital, he learned that he was hit with buckshot. Ramos further testified that there were a couple seconds between the first shot and the second and third shots. Ramos thought that he was hit by the first shot because at the first firing he covered his eyes with his hands. He was hit on the right palm, through his pinky finger, and in his right leg. On cross-examination, Ramos testified that he did not see any cars drive into the area before the shooting. He also testified that he was not sure if he may have been hit by the second or third shots.

Otonel Martinez testified that he was on the Waukegan side of 10th between Lincoln and Prescott on the day and at the time in question. He had just left a bar on the North Chicago side of 10th Street. There were individuals on each side of 10th Street yelling and screaming gang signs to each other. Martinez further testified that a black male riding a bike threw a bottle at the corner where he was standing. He thought it was a shot because it made a popping noise. Three cars parked on Prescott and some people got out of the cars. He described the cars as a small red car with a smashed out rear window, a black "small, like, Datsun, Mazda," and a beige car. Martinez turned around and he heard shots. He ran after the first shot and hid in an abandoned building. Martinez testified that he heard three shots. Martinez was shot in the stomach and the legs. He spent four days in the hospital.

Eslido Salinas testified that he was also at the scene of the shooting. He had been at the bar on the North Chicago side of 10th Street after attending the party at the Puerto Rican Society. He reiterated that groups on each side of 10th were "throwing gang signs." Salinas further testified that two or three cars pulled up, one being what he believed was a black Toyota. Salinas also recalled one vehicle was tan or beige. He saw two or three people exit the black car. He testified that, before the shooting, words were exchanged between the people from the car and the people on the street. He testified that that was when he heard shots and saw the shooter was one of the people from the black car. Salinas stated that it was about 30 seconds from the time the shooter exited the car until he produced a weapon. Salinas heard three shots and was hit in both legs. Salinas testified that he

was hit with the first shot. Salinas identified defendant as the shooter.

On cross-examination, Salinas testified that he is a member of the Maniac Latin Disciples. He also testified that the back window of the black Toyota was not smashed out, and the vehicle did not have tinted windows.

Renee Andrzejewski testified that she was dating defendant and was in her car with him on the night of the shooting. They were returning from the Taste of Chicago festival in Renee's black Toyota Celica. A friend of defendant's, Tim, was sitting in the backseat. Renee testified that the rear window was not smashed out. She further testified that they circled 10th Street looking for a party. She observed many people standing on both sides of 10th Street. They parked the car and were starting to exit the vehicle when some people approached them. Defendant told Renee to get back in the car, which she did. When the people continued to walk toward them, defendant returned to the car and took out a friend's gun from the car. Renee testified that defendant shot once in the air. Renee did not recall the group shouting anything as they approached but there was a lot of noise in the area. After the first shot was fired, Renee did not see anything as she was not looking in that direction. She further testified that she heard two shots fired in all but did not see where the second shot was pointed.

Detective Donald Meadie of the Waukegan police department testified that he took a statement from defendant at 8:30 a.m. on July 15, 1991. Defendant was advised of his *Miranda* rights and signed a waiver form. Meadie then read defendant's statement to the jury. In the statement, defendant acknowledged that he had a sawed-off shotgun in his girlfriend's car and that they parked at 10th and Prescott in the early morning of June 30, 1991. Defendant stated that he took five steps after exiting the car and saw about five Hispanic males, who he knew were members of the Maniac Latin Disciples, yelling "Disciples, Disciples." He further stated that 20 or 30 other gang members appeared from around a building and started to move in his direction. He went back to the car, got the shotgun and fired one round in the air. The group kept proceeding in his direction so he fired a round in their direction, which he stated had slowed them down. Defendant stated that he fired another round at them. The group stopped, turned around and ran away. Defendant got back in the car and Renee drove off. Defendant read about the injuries in the newspaper the following day. Defendant agreed with the statement but did not sign it.

Among the witnesses for the defense was Officer Paul Hendley. He testified that he believed the shooter was 20 to 25 feet away from the victim when he fired the shotgun. Hendley stated that number six birdshot, which was the ammunition used, has a tendency to spread widely after discharge, which could cause injury to numerous victims. Hendley acknowledged that while testifying in front of the grand jury, he stated that the victims were closer than 20 to 25 feet from the shooter because the victims were able to describe the vehicle that the shooter stood by.

Defendant testified consistently with the previous statement he gave to the police. Defendant also stated that he is acquainted with gang members but is not a member of a gang. He testified that his girlfriend's car did not have a broken rear window. After the incident, defendant called the police to give his version of the story. An officer he spoke with told him to get a lawyer and turn himself in. Defendant did not get a lawyer and he was apprehended 15 days after the shooting. That is when defendant gave his statement to the police.

The jury found defendant guilty of six counts of armed violence and six counts of aggravated discharge of a firearm. He was sentenced to 10 years' imprisonment for armed violence and a concurrent term of 10 years' imprisonment for aggravated discharge of a firearm. After sentencing, defendant filed a timely notice of appeal.

■ The State concedes two issues on appeal. First, the State agrees that defendant was convicted improperly of both six counts of armed violence and six counts of aggravated discharge of a firearm because both charges arose from the act of shooting six individuals. (See *People v. Johnson* (1989), 128 Ill. 2d 253, 288, quoting *People v. King* (1977), 66 Ill. 2d 551, 566.) Thus, we vacate defendant's six convictions of and sentence for aggravated discharge of a firearm. The State also agrees that defendant is entitled to receive credit toward his sentence for being held in custody on July 15, 1991. Defendant shall receive one additional day of credit for time served.

■ Defendant contends that the State failed to prove beyond a reasonable doubt that he shot the victims without legal justification. He argues that the evidence shows that he fired two rounds of birdshot at an advancing crowd chanting gang slogans at 1:30 a.m. in a dangerous neighborhood after firing a warning shot. The State argues that any rational jury could have found no legal justification based on the State's witnesses' testimony that no one was advancing toward defendant prior to the shooting.

If an affirmative defense, such as the justifiable use of force, is raised at a defendant's trial, the State must prove the defendant guilty beyond a reasonable doubt as to that issue and all other elements of the offense. (Ill. Rev. Stat. 1991, ch. 38, par. 3—2(b) (now 720 ILCS 5/3—2(b) (West 1992)); *People v. Durden* (1992), 231 Ill. App. 3d 84, 86.) The defendant must present evidence to support the affirmative defense if the State fails to raise the issue. Ill. Rev. Stat. 1991, ch. 38, par. 3—2(a) (now 720 ILCS 5/3—2(a) (West 1992)).

A reviewing court will not set aside a conviction unless the evidence was so improbable and unsatisfactory that it creates a reasonable doubt of the defendant's guilt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261.) The evidence is viewed in the light most favorable to the prosecution to determine whether it was sufficient to convince any rational trier of fact that the defendant is guilty beyond a reasonable doubt. *People v. Albert* (1993), 243 Ill. App. 3d 23, 26.

We are presented with a classic case of a credibility dispute. The various victims testified that they were not approaching defendant's vehicle before the shooting. Allen Jordan testified that three people ran toward the car before the shooting. Defendant's girlfriend testified that a group of individuals was approaching but was not shouting at defendant. Defendant testified that the group was approaching and shouting gang slogans. He further testified that the group ran away only after he fired the second shot in its direction. The victims testified that they began running away after the first shot, which defendant claimed was not aimed in the group's direction.

It is not the reviewing court's function to retry the defendant. (*Collins*, 106 Ill. 2d at 261.) The trier of fact weighs the credibility of the witnesses, draws reasonable inferences from their testimony, and resolves the conflicts in the evidence. (*People v. Felella* (1989), 131 Ill. 2d 525, 534.) The reviewing court will not substitute its judgment for that of the trier of fact. *Felella*, 131 Ill. 2d at 534.

The jury heard the conflicting testimony. It was within the province of the jury to resolve the conflicts in the evidence in favor of rejecting the affirmative defense of justifiable use of force. We will not disturb the findings of guilt.

Defendant contends, relying on *In re S.M.* (1981), 93 Ill. App. 3d 105, that a claim of self-defense is not refuted when someone fires a warning shot on an advancing crowd and fires into the crowd when they continue to advance. However, his argument assumes that the evidence of an advancing crowd is undisputed. Here, there was conflicting evidence of whether a group was advancing toward defendant before the shooting. Defendant also relies on *People v. McGrath*

(1989), 193 Ill. App. 3d 12. *McGrath* also is distinguishable because the victims admitted that they followed the defendant to retaliate for a previous incident. *McGrath*, 193 Ill. App. 3d at 27.

■ Defendant next contends that the trial court reversibly erred when it disallowed defendant's request for the street addresses of the prospective jurors. Defendant claims that this action violates section 115—4(c) of the Code of Criminal Procedure of 1963 (Code of Criminal Procedure) (Ill. Rev. Stat. 1991, ch. 38, par. 115—4(c) (now 725 ILCS 5/115—4(c) (West 1992))) and Supreme Court Rule 434(b) (134 Ill. 2d R. 434(b)). The State argues that *People v. Partee* (1987), 157 Ill. App. 3d 231, is the only case that has interpreted section 115—4(c) and Rule 434(b), finding that the requirement of providing prospective jurors' addresses is permissive, not mandatory.

Section 115—4(c) of the Code of Criminal Procedure and Supreme Court Rule 434(b) identically provide:

> "Upon request the parties shall be furnished with a list of prospective jurors with their addresses if known." Ill. Rev. Stat. 1991, ch. 38, par. 115—4(c) (now 725 ILCS 5/115—4(c) (West 1992)); 134 Ill. 2d R. 434(b).

Our research has revealed no pertinent case other than *Partee* (157 Ill. App. 3d 231). There, the Appellate Court, First District, held that section 115—4(c) is permissive in nature, stating:

> "The committee comments for this section [115—4(c)], however, provide that '[t]he additional provision for addresses if known is for the convenience of both parties.' We hold that this provision is permissive in nature. Moreover, it is evidence that the exclusion of addresses in no way prejudiced defendant." (*Partee*, 157 Ill. App. 3d at 259-60.)

Notwithstanding any issue presented pertaining to the timeliness of defendant's post-trial motion and the preservation of issues on appeal, we hold that the trial court did not err in denying the request for the prospective jurors' addresses. We adopt the rationale of *Partee*, particularly in a case like this where the trial judge denies the defendant's request to prevent possible or juror-perceived gang reprisal. Defendant argues that without the street addresses of the prospective jurors he is unable to determine their socioeconomic status. However, there are other questions, such as asking prospective jurors about their jobs, that will provide insight into their socioeconomic status. Thus, defendant has not demonstrated that he was prejudiced by the trial court's decision. In fact, defense counsel was granted his request to see the address of one prospective juror

because he believed that the prospective juror and he had been involved in a previous matter. We find no cause for reversal.

■ Finally, defendant contends that the trial court abused its discretion when sentencing him to concurrent 10-year terms for armed violence and aggravated discharge of a firearm. Because the convictions of aggravated discharge of a firearm have been vacated, we will address defendant's sentencing issue only as it relates to his sentence for armed violence.

Defendant argues that his sentence is excessive given his nonviolent criminal history, his age, and his substantial employment record. He also argues that the trial judge erroneously relied on factors implicit in the offense, namely, his use of a firearm and the threat of serious harm, as aggravating factors in sentencing. Defendant claims that his sentence is excessive in light of the circumstances of the offense, that he fired birdshot toward an advancing crowd in order to protect himself.

The State counters by arguing that defendant has waived the sentencing issue by failing to object at the sentencing hearing or filing a motion to reconsider the sentence. Alternatively, the State argues that the aggravating factors relied upon by the trial court are not factors implicit in the offense of armed violence. The State claims that the trial court also properly considered the mitigating factors in imposing the 10-year sentence.

We first address waiver. The general rule is that an objection related to a defendant's sentence first must be presented to the trial court before review may be sought. (*People v. Hess* (1993), 241 Ill. App. 3d 276, 281.) Sentencing issues are waived on appeal unless challenged in the trial court either by objection at the sentencing hearing or by way of a motion to reconsider the sentence. *Hess*, 241 Ill. App. 3d at 281; *People v. Bolden* (1991), 210 Ill. App. 3d 940, 947.

Defendant did not object to any aspect of his sentence either at the sentencing hearing or in a post-sentencing motion. Thus, the issue has been waived. Further, we find that no plain error has occurred.

The use of a weapon was a proper factor to consider in aggravation and is not an element of armed violence. (See *People v. Estrella* (1988), 170 Ill. App. 3d 292, 297 (actual use of weapon to cause serious harm is not an implicit element of armed violence).) Also, the threat of serious bodily harm is a statutorily recognized aggravating factor that existed in this case. (Ill. Rev. Stat. 1991, ch. 38, par. 1005—5—3.2(a)(1) (now codified, as amended, at 730

ILCS 5/5—5—3.2(a)(1) (West 1992)).) The commission of any offense has varying degrees of harm or threatened harm, and this varying degree constitutes an aggravating factor even where serious bodily harm is implicit in the offense. (*People v. Allan* (1992), 231 Ill. App. 3d 447, 458.) The trial court did not plainly err in relying on either of the above-mentioned aggravating factors.

We also find that the trial court did not plainly err when imposing the 10-year sentence for armed violence. The judge considered the mitigating evidence and clearly stated that he thought the self-defense theory was "basically non-existent." A reviewing court will modify a sentence within the statutory limits only when there has been a "clear departure from the spirit and purpose of the fundamental law and the constitutional requirement that the sentence be proportionate to the nature of the offense and that the possibilities for rehabilitation be taken into account." (*Bolden*, 210 Ill. App. 3d at 947.) Defendant's 10-year sentence was four years over the statutory minimum sentence of six years for armed violence, a Class X felony when committed with a category I weapon such as a shotgun (Ill. Rev. Stat. 1991, ch. 38, pars. 33A—1, 33A—3 (now 720 ILCS 5/ 33A—1, 33A—3 (West 1992)); Ill. Rev. Stat. 1991, ch. 38, par. 1005— 8—1(a)(3) (now 730 ILCS 5/5—8—1(a)(3) (West 1992))), and one-half of the 20-year sentence sought by the State. We will not disturb the sentence.

For the foregoing reasons, defendant's convictions of and sentence for six counts of aggravated discharge of a firearm are vacated. Defendant shall be given one day's credit toward his sentence for time served. His convictions of and sentence for six counts of armed violence are affirmed.

Affirmed in part; vacated in part.

DOYLE and COLWELL, JJ., concur.