STATE of Missouri, Plaintiff–Respondent,

v.

Gregory MORROW, Defendant–Appellant.

No. 18935.

Missouri Court of Appeals,
Southern District,
Division One.

Dec. 1, 1994.

---

Lyle M. Gregory, Caruthersville, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jennifer A. Glancy, Asst. Atty. Gen., Jefferson City, for respondent.

FLANIGAN, Judge.

A jury found defendant guilty on two counts of unlawful use of a weapon, § 571.030.1(3),[1] and he was sentenced, as a prior and persistent offender, to a term of ten years' imprisonment on Count I and four years' imprisonment on Count II, the sentences to run consecutively. Defendant appeals.

Defendant's sole point is that the trial court erred in denying his motion to dismiss one count, in violation of his rights under the Double Jeopardy Clause, "and applicable Missouri common and statutory law in that the act of shooting into the dwelling was a continuous course of conduct since testimony established that it occurred on the same occasion, all shots hit the same house, and all shots fired were fired in rapid succession."

Section 571.030 reads, in pertinent part:

"1. A person commits the crime of unlawful use of weapons if he knowingly:

... (3) Discharges or shoots a firearm into a dwelling house....

4. Unlawful use of weapons is a class D felony unless...."

In addition to its formal parts and allegations of defendant's prior convictions, Count I charged "that on or about October 23, 1992, in the County of Pemiscot, State of Missouri, the defendant knowingly shot a firearm into a dwelling house located at Burton Street, Steele, Missouri." Except for being captioned "Count II" instead of "Count I," Count II was identical to Count I. Defen-

1. All references to statutes are to RSMo 1986, V.A.M.S.

dant does not challenge the sufficiency of the evidence to support the conviction on Count I. He requests reversal of his conviction on Count II.

The state's evidence showed that on October 23, 1992, Brian Rogers and his wife and their two-year-old son lived in a house at 201 Burton Street, Steele, Missouri, in Pemiscot County. Rogers went to bed at 10:30 p.m. He was awakened by the noise of glass breaking. Upon investigation, he found that his son's bedroom had been penetrated by shots from a shotgun. The outside of his house bore more than two shotgun blast patterns. Patrolman Jim Morton, of the Steele Police Department, found three spent shotgun shells on a railroad track about 50 yards from the Rogers house.

Prior to the shooting, Steve Brown, Tim Collins, and Jeff Cunningham were near the Rogers house drinking beer. Defendant arrived carrying a 12–gauge pump shotgun. Defendant told the trio he was going to "shoot up this house." The trio decided to leave. Brown saw defendant point the shotgun at the Rogers house and heard "anywhere from three to six shots." Brown said, "When I heard the shots go off, they were real quick, one right after the other." Cunningham testified that he saw defendant with the shotgun and heard four shots fired. Then defendant "came running past me on the tracks."

Instruction 8, the verdict-director on Count I, read, in pertinent part:

"Instruction No. 8

"As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

That on October 23, 1992, in the City of Steele, County of Pemiscot, State of Missouri, the defendant knowingly shot a firearm into a dwelling house,

then you will find the defendant guilty under Count I of unlawful use of a weapon."

Instruction 9, the verdict-director on Count II, was identical to Instruction 8 except that it used "Count II" in the two places where Instruction 8 used "Count I."

The court also gave Instruction 12, which read:

"Instruction No. 12

"The defendant is charged with a separate offense in each of the two counts submitted to you. Each count must be considered separately.

"You should return a verdict for each count and you can return only one verdict for each count." [2]

The jury returned a verdict of guilty on Count I and a separate verdict of guilty on Count II.

■ The mere fact that Count I and Count II were identical does not invalidate either count, *State v. Martin,* 852 S.W.2d 844, 856[14] (Mo.App.1992), or render either count insufficient, *State v. Riggs,* 770 S.W.2d 361, 362[1] (Mo.App.1989).

■ The Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." The Fifth Amendment is made applicable to the states through the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 (1969).

■ The Missouri Constitution provides that no person shall "be put again in jeopardy of life or liberty for the same offense, after being once acquitted by a jury...." Mo. Const. art. I, § 19. Since defendant was never acquitted by a jury, the Double Jeopardy Clause of the Missouri Constitution does not apply to his case. *State v. McTush,* 827 S.W.2d 184, 186 (Mo. banc 1992); *State v. Shive,* 624 S.W.2d 136, 138, n. 3 (Mo.App. 1981). As pointed out in *State v. Richardson,* 460 S.W.2d 537, 538 (Mo. banc 1970), however, Missouri enforces the common law

---

**2.** Instruction 12 was apparently based on MAI–CR 3d 304.12, although the latter instruction contains the word "separate" before the word "verdict," where that word first appears in the last sentence of Instruction 12. Defendant makes no claim of instruction error. Specifically he makes no claim that Instructions 8, 9, and 12, construed together, authorized two convictions based on the firing of the same shell.

rule that no person shall, for the same offense, be twice put in jeopardy. Our supreme court there said, "We find no readily discernible difference between the Fifth Amendment guarantee against double jeopardy and the common law guarantee as applied in this state." Defendant's protection from double jeopardy under Missouri law is coextensive with that afforded by the Fifth Amendment.

Referring to the Double Jeopardy Clause of the Fifth Amendment, the court, in *State v. Nichols*, 865 S.W.2d 435 (Mo.App.1993), said, at 437[1,2]:

"This constitutional guarantee includes protection against multiple punishments for the same offense. *State ex rel. Westfall v. Campbell*, 637 S.W.2d 94, 96[3] (Mo.App. 1982). This protection forbids the state from splitting a single crime into separate parts and then prosecuting the offense in piecemeal. *Id.* at 97[4].

"The double jeopardy prohibition upon multiple punishments for the same offense is limited to preventing the sentencing court from inflicting greater punishment than the legislature intended. *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 678[1], 74 L.Ed.2d 535 (1983). In determining the legislative intent, we must examine the definition of the offense and its allowable unit of prosecution."

"In the abstract, it is correct that neither multiple convictions nor multiple punishments may be obtained for one crime. Missouri, however, follows the separate or several offense rule rather than the same transaction rule. [M]ultiple convictions are permissible if the defendant has in law and in fact committed separate crimes." *State v. Foster*, 838 S.W.2d 60, 66[13,14] (Mo.App.1992) (citations omitted).

■ The basic inquiry is whether the legislature, in enacting § 571.030.1(3), intended to allow, as a unit of prosecution, the discharging or shooting of one shot from a firearm into a dwelling house. For the reasons which follow, this court holds that such was the legislative intent and that defendant's point has no merit.

Defendant's able counsel, who preserved his point at every stage of the trial court proceedings, argues:

"Nothing in [§ 571.030.1(3) ] gives clear guidance to courts as to the 'allowable unit of prosecution.' Certainly, had the legislature intended to do so, it could easily have written the statute to read that a person commits said offense *each time* he knowingly discharges a firearm into a dwelling house. However, the statute does not say that.... He should not be twice prosecuted for an offense which was clearly a continuous course of conduct.... Apparently, the trial court placed much reliance on the fact that the offenses were 'separated' because defendant had to pump the shotgun twice and pull the trigger twice. One problem with that analysis is that it does not distinguish defendant's conduct from the conduct at issue in [*State v. Good*, 851 S.W.2d 1 (Mo.App.1992) ]. If a defendant who resisted two separate officers in two separate ways was engaged in a continuous course of conduct, then surely defendant was as well. Moreover, if one accepts the trial court's analysis, a person who used an automatic weapon to fire a continuous stream of bullets into a house could be charged only once, whereas a person who used a semiautomatic pistol to fire two bullets into a house could be charged twice because he'd had to cock the gun again after the first shot. That cannot be what the legislature intended."

The excellent brief of the state counters with this argument:

"[D]efendant committed two counts of unlawful use of a weapon by two separate acts. The weapon defendant used to commit the offenses was a 12–gauge 'pump' shotgun. Two shotgun blasts were found in different locations on the outside of Rogers' home, through the window and side of the house. Defendant committed two separate and distinct offenses given that it took the acts of 'pumping another shell into the chamber' and then pointing and firing the shotgun a second time into Rogers' house.... [Defendant's] convictions for two counts of unlawful use of a weapon were based on two separate acts, rather than the 'same conduct' of defendant. Each act of firing the shotgun into Rogers'

dwelling constitutes a distinct and separate offense.... When a person discharges a weapon, there is a thought process involved. Defendant did not use an automatic weapon, where he pulled the trigger once—a single act—producing more than one shot. Rather, defendant had to repeat a sequence of acts for a second time. After defendant fired the shotgun into Rogers' home once, he put another shell into the chamber, aimed and pointed the shotgun at a different location of Rogers' house, and pulled the trigger a second time. Defendant committed two acts, which were separate incidents that occurred at different times. Furthermore, defendant had to form the intent, a conscious thought process, a second time.... Finally, to accept defendant's argument would be contrary to public policy and the legislature's intent to minimize criminal conduct. Clearly, the statutory intent of § 571.030.1(3), under which defendant was convicted, cannot be interpreted to allow a defendant, who has fired a shotgun once into a dwelling, to continue to fire the weapon into the house with impunity."

 Crimes are defined and punishments are prescribed by the legislature, not by courts or prosecuting attorneys. In the multiple punishments context, the interest that the Double Jeopardy Clause seeks to protect is limited to ensuring that the total punishment does not exceed that authorized by the legislature. *Jones v. Thomas,* 491 U.S. 376, 379–81, 109 S.Ct. 2522, 2525[1], 105 L.Ed.2d 322 (1989). "The purpose is to ensure that sentencing courts do not exceed, by the device of multiple punishments, the limits prescribed by the legislative branch of government, in which lies the substantive power to define crimes and prescribe punishments." *Id.* at 381, 109 S.Ct. at 2525–2526.

"In the federal courts the test established in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), ordinarily determines whether the crimes are indeed separate and whether cumulative punishments may be imposed." *Ohio v. Johnson,* 467 U.S. 493, 499 n. 8, 104 S.Ct. 2536, 2541, n. 8, 81 L.Ed.2d 425 (1984). "[H]owever, the *Blockburger* test does not necessarily control the inquiry into the intent of a state legislature. Even if the crimes are the same under *Blockburger,* if it is evident that a state legislature intended to authorize cumulative punishments, a court's inquiry is at an end." *Id.*

This case does not involve the performance of one act constituting the violation of two statutes. This case involves a single statute, and the issue is whether it was violated twice or only once.

The landmark case of *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), did not, itself, involve the Fifth Amendment, for it was not mentioned in the opinion. *Blockburger* simply addressed the matter of statutory construction. There were two aspects to *Blockburger.* One involved separate violations of the same statute, and the other involved the violation of two statutes by the same act. It is only the first aspect which is germane here. In *Blockburger,* the defendant was tried on five counts and was convicted on the second, third and fifth counts. The convictions on the second and third counts are significant here.

The second count charged defendant with the sale of a narcotic to a purchaser on a certain day. The third count charged defendant with making a sale of the same narcotic to the same purchaser on the following day. The Court rejected defendant's contention that the two sales constituted a single offense. The court said there was a well-settled distinction between an offense continuous in its nature and the sales involved here. Distinguishing an earlier case, it said that the offense of cohabiting with more than one woman was a continuous offense, having duration, and not an offense consisting of an isolated act. The court said that the federal statute prohibiting the sale of the forbidden drugs penalized any sale and that "[e]ach of several successive sales constitutes a distinct offense, however closely they may follow each other." 284 U.S. at 302, 52 S.Ct. at 181. The court pointed out that the first sale had come to an end and the second sale was not the result of the original impulse but of a new bargain.

The court said, at 300–03, 52 S.Ct. at 181:

"The distinction stated by Mr. Wharton is that, 'when the impulse is single, but one indictment lies, no matter how long the action may continue. If successive impulses are separately given, even though all unite in swelling a common stream of action, separate indictments lie.' Wharton's Criminal Law (11th Ed.) § 34. Or, as stated in note 3 to that section, *'The test is whether the individual acts are prohibited, or the course of action which they constitute. If the former, then each act is punishable separately. * * * If the latter, there can be but one penalty.'* " (emphasis added).

Missouri cases involving allegedly separate violations of one statute and separate punishments therefor include *State v. Heslop,* 842 S.W.2d 72 (Mo. banc 1992); *State v. Nichols,* 865 S.W.2d 435 (Mo.App.1993); *State v. Good,* 851 S.W.2d 1 (Mo.App.1992); *State v. Baker,* 850 S.W.2d 944 (Mo.App.1993); *State v. Riggs,* 770 S.W.2d 361 (Mo.App.1989); *State v. Childs,* 684 S.W.2d 508 (Mo.App. 1984); and *State v. Dennis,* 537 S.W.2d 652 (Mo.App.1976). Only in *Good* and *Baker* was a claim of double jeopardy upheld.

In *Heslop,* larceny by defendant of a truck was held to be separate from the larceny of another truck by defendant and an accomplice. The larcenies took place on the same day, within minutes of each other. The court said that each act constituted a separate and distinct stealing.

In *Nichols,* defendant was convicted on four counts of carrying a concealed weapon, based on his possession of four concealed knives on the same occasion. Section 571.030.1(1) made it illegal for a person knowingly to carry "a knife" concealed upon or about his person. The court said that the allowable unit of prosecution was denoted by the use of the word "a" and that "*each* knife which defendant carried concealed about or upon his person is an allowable unit of prosecution." (emphasis in original).

In *Riggs,* defendant was charged in two separate, but identical, counts of having deviate sexual intercourse with the same victim to whom he was not married and who was then 14 years old. The two counts were identical but based on different acts, one involving the victim's vagina and one involving the victim's mouth. The court pointed out that if defendant had committed only one act, either of the two counts alone would have been sufficient to charge him with the crime. The court said that the defendant violated the same statute more than once against the same victim within the same time period.

In *Childs,* the defendant, over a period of five hours, committed three rapes on the same victim. The court affirmed three rape convictions. Similarly, in *Dennis,* two rapes committed on the same victim, during the same criminal episode, supported two convictions. The court said, at 654: "Certainly it cannot be held that a man who has raped a woman once may again assault and ravish her with impunity."

In *Good,* the defendant was charged in two counts with the felony of resisting arrest. The charges arose out of a single incident involving defendant's resistance of two officers. The two counts were identical except that one charged resistance of Officer Evans and the other charged resistance of Officer Duncan. The court held that the gist of the offense was resisting an arrest, and the offense was not dependent upon how many officers were attempting to arrest the defendant. Defendant's conviction on Count II was reversed.

In *Baker,* defendant was convicted on four counts of possession of a weapon on the premises of a correctional facility. Defendant was found in possession of four knives. The statute made it an offense for any person to possess, in a correctional facility, "*any* knife." The court found that the statute was ambiguous as to the allowable unit of prosecution and upheld only one conviction.

The statute involved here, § 571.030.1(3), makes it an offense for a person knowingly to discharge or shoot a firearm into a dwelling house. Clearly the statute is designed to protect the occupants of a dwelling house and punish the person who would, by the proscribed act, put the occupant's life in jeopardy. One firing of a firearm into a dwelling house constitutes a discharge or shooting of the firearm into a dwelling house. The conduct proscribed is complete on one shot. A subsequent shot,

whether moments or a substantial amount of time later, creates the same danger which the statute was intended to prevent. The mere fact that it is the second shot, rather than the first shot, should not excuse it. In the language of *Blockburger*, the individual act of shooting a single shot is prohibited.

 This court holds that the legislative intent, in defining the offense proscribed in § 571.030.1(3), was to make each firing of the firearm an allowable unit of prosecution and that separate convictions on Counts I and II, and separate punishments therefor, did not infringe defendant's rights under the Double Jeopardy Clause.[3]

There is no merit to defendant's argument that this holding is inconsistent with § 556.041, which reads, in pertinent part:

"When the same conduct of a person may establish the commission of more than one offense he may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if ...

"(4) The offense is defined as a continuing course of conduct and the person's course of conduct was uninterrupted, unless the law provides that specific periods of such conduct constitute separate offenses."

The instant offense is not "defined as a continuing course of conduct." It is complete upon the firing of one shot. In this respect it differs from some offenses which, by their nature, may involve "a continuing course of conduct." Examples include false imprisonment, bigamy, nonsupport, and operation of a house of prostitution. See *State v. Pacchetti*, 729 S.W.2d 621, 627 (Mo.App.1987).

The judgment is affirmed.

SHRUM, C.J. and MONTGOMERY, J., concur.

3. Decisions in other states, based on varying statutes, have upheld multiple convictions for multiple shots from a firearm. They include: *Kelly v. State*, 552 So.2d 206[1,2] (Fla.App.1989); *People v. Files*, 632 N.E.2d 1087[7,11] (Ill.App. 1994); *People v. Banks*, 260 Ill.App.3d 464, 198 Ill.Dec. 198, 632 N.E.2d 257[11,13] (1994); *People v. Tayborn*, 254 Ill.App.3d 381, 193 Ill.Dec. 849, 627 N.E.2d 8[13,14] (1993); *People v. Robinson*, 250 Ill.App.3d 824, 189 Ill.Dec. 310, 619 N.E.2d 1359[1] (1993); *Morris v. Commonwealth*, 228 Va. 206, 321 S.E.2d 633[7] (1984). See 80 ALR 4th 631 [Double Jeopardy: various acts of weapons violations as separate or continuing offense.]