GREGORY CIPOV, Plaintiff-Appellant, v. INTERNATIONAL HARVESTER COMPANY *et al.*, Defendants-Appellees.

First District (4th Division)   No. 84—1788

Opinion filed June 27, 1985.

Lawrence W. Leck and Associates, Ltd., of Chicago, for appellant.

Thomas F. Gardner and John N. Scholnick, both of Kirkland & Ellis, of Chicago, for appellees.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

The plaintiff, Gregory Cipov, was a general foreman and an at-will employee of the defendant, International Harvester Company. He was fired and filed a complaint for retaliatory discharge, alleging he was terminated because he refused to take a polygraph examination. The trial court dismissed the complaint. The plaintiff appeals. The sole issue on review is whether termination of an at-will employee for failure to take a polygraph examination states a cause of action for the tort of retaliatory discharge.

Cipov was hired by International Harvester in November 1981. At that time, the defendant asked Cipov to take a polygraph examination. Cipov complied. In April 1982, allegedly as a result of anonymous letters accusing Cipov of theft and conspiracy, the defendant then asked Cipov to take another polygraph exam. Throughout May 1982, Cipov refused to take the second exam. On May 28, 1982, the defendant informed Cipov that he was being discharged.

On appeal, Cipov contends that polygraph examinations are inherently unreliable and that there is a clearly mandated public policy against their use in the employment setting. Cipov therefore contends that he has stated a cause of action for retaliatory discharge.

A retaliatory discharge cause of action was first recognized in Illinois in *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353. In *Kelsay*, an at-will employee was discharged in retaliation for filing a workmen's compensation claim against her employer. In deciding *Kelsay*, the Illinois Supreme Court examined the history and purpose of the Workers' Compensation Act and then created a cause of action for retaliatory discharge reasoning that its creation was necessary to insure that the public policy behind the enactment of the Workers' Compensation Act was not frustrated.

Then, in *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 421 N.E.2d 876, the Illinois Supreme Court began to determine the contours of the retaliatory discharge action. The court however recognized that the tort of retaliatory discharge is an exception to the general rule that an at-will employee is terminable at any time for any or no cause. In *Palmateer*, an at-will employee was terminated for informing local law enforcement authorities of suspected criminal activities of his co-employee and for agreeing to assist in the investigation and trial of the co-employee. In finding that the plaintiff-employee's complaint stated a cause of action for retaliatory discharge, the court stated that the foundation of the tort of retaliatory discharge lies in the protection of public policy. The key requirement

is that the employer discharge the employee in retaliation for the employee's activities and that the discharge be in contravention of a clearly mandated public policy.

"[P]ublic policy concerns what is right and just and what affects the citizens of the State collectively. It is to be found in the State's constitution and statutes and, when they are silent, in its judicial decision. [Citation.] Although there is no precise line of demarcation dividing matters that are the subject of public policies from matters purely personal, * * * a matter must strike at the heart of a citizen's social rights, duties, and responsibilities before the tort will be allowed." *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 130.

In the most recent decision on the subject, the Illinois Supreme Court in *Barr v. Kelso-Burnett Company* (1985), 106 Ill. 2d 520, found that a cause of action for the tort of retaliatory discharge does not lie where an employer allegedly terminated employees for speaking out against layoff procedures. In addition to finding that no clearly mandated public policy was violated, the court in *Barr* indicated that based on its decisions in *Palmateer* and *Kelsay*, it favored a narrow interpretation of the retaliatory discharge tort and did not support the expansion of the tort. The court stated that, "[t]he common law doctrine that an employer may discharge an employee at-will for any reason or no reason is still the law in Illinois except for when the discharge violates a clearly mandated public policy." 106 Ill. 2d 520, 525.

■ Cipov asserts that the Illinois Supreme Court decision in *Kaske v. City of Rockford* (1983), 96 Ill. 2d 298, 450 N.E.2d 314, *cert. denied sub nom. City of Rockford v. Kaske* (1983), 464 U.S. 960, 78 L. Ed. 2d 335, 104 S. Ct. 391, sets forth a public policy which, in its broader interpretation, prohibits employers from discharging employees for refusing to take a polygraph examination. In *Kaske*, an estranged wife of a police officer accused her husband and another officer of using marijuana. After both officers denied the crime, they were ordered to undergo polygraph examinations or face disciplinary actions. The officers refused and sought an injunction against the administration of the exam.

The Illinois Supreme Court granted the injunction, holding that because of the inadmissibility of polygraph results at the officer's administrative hearing, due to their unreliability, a municipal police officer can refuse to submit to a polygraph examination and such refusal cannot be used as a basis for filing of charges seeking disciplinary action against the officer. Although Cipov acknowledges that *Kaske* involved public as opposed to private employees, he nevertheless as-

serts that *Kaske* makes no real distinction between public and private but rather it focuses on the unreliability of the polygraph exam, as evidenced by its citation to *People v. Baynes* (1981), 88 Ill. 2d 225, 430 N.E.2d 1070, a case that catalogues the factors that invalidate polygraph results.

We do not accept Cipov's argument that *Kaske* sets forth a public policy that controls the instant matter. Cipov's acknowledgement of the public-private distinction between *Kaske* and the case at bar does not accurately represent the significance of this fundamental distinction. As was discussed, *Kaske* involved a police officer. A police officer, a public employee, is classified as a civil servant and can only be discharged for cause. (See Ill. Rev. Stat. 1983, ch. 24, par. 10—1—18; *Sutton v. Civil Service Com.* (1982), 91 Ill. 2d 404, 438 N.E.2d 147.) The court in *Kaske* determined that because polygraph examinations are too unreliable to be used as substantive evidence, the refusal to submit to one cannot serve as a basis of a finding of legitimate cause for which a public employee can be properly discharged.

However, in the instant case, Cipov is not a public employee, but rather an at-will employee. An at-will employee can be terminated for any or no reason. (*Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 421 N.E.2d 876.) As an at-will employee, Cipov is not accorded the same protections as a public employee. This is the key fact which renders *Kaske* distinguishable from the case at bar and therefore unavailing to Cipov. *Kaske* does not present a clearly mandated public policy as asserted by Cipov.

As further support for his argument that a discharge of an at-will employee for refusing to submit to a polygraph exam contravenes a clearly mandated public policy, Cipov cites to various other jurisdictions that have statutorily or judicially determined, either explicitly or implicitly, that there is a public policy protecting employees for refusing to submit to such examinations. See *Farmer v. City of Fort Lauderdale* (Fla. 1983), 427 So. 2d 187, *cert. denied* (1983), 464 U.S. 960, 78 L. Ed. 2d 86, 104 S. Ct. 74; *In re Fairbanks* (Iowa 1980), 287 N.W.2d 579; *State v. Community Distributors, Inc.* (1974), 64 N.J. 479, 317 A.2d 697; Cal. Lab. Code sec. 432.2 (Deering 1984); Mass. Gen. Laws Ann. ch. 149, sec. 19b (West 1982); N.J. Stat. Ann. sec. 2C:40A—1 (West 1982).

Cipov's citations to other jurisdictions present insufficient authority. First, these cases are not binding on this court. Further, both *Farmer* and *Fairbanks* involve public employees and are therefore factually distinguishable from the instant case, as was *Kaske*. Finally, *Community Distributors* involves the interpretation of a State statute

that prohibits an employer from making polygraph examinations a condition of employment or continued employment. The reviewing court concluded that terminating an employee after he submitted to an examination was contrary to the statute. In the instant case, there is no similar statute. Accordingly, Cipov has failed to persuade this court that the termination of an at-will employee for refusing to submit to a polygraph examination contravenes a clearly mandated public policy.

Therefore, based on the foregoing, the trial court's dismissal of Cipov's complaint is affirmed.

Affirmed.

JOHNSON and LINN, JJ., concur.