JOSEPH STAHULAK, Plaintiff-Appellee, v. THE CITY OF CHICAGO *et al.*, Defendants-Appellants (Chicago Firefighters Union, Local No. 2, International Association of Firefighters, AFL-CIO-CIC, Defendant).

First District (1st Division)    No. 1—95—3611

Opinion filed August 25, 1997.

Susan S. Sher, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Mardell Nereim, Assistant Corporation Counsel, of counsel), for appellants.

Stanley H. Jakala, of Berwyn, for appellee.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Defendants City of Chicago (City), Chicago Fire Department (Department) and Raymond E. Orozco, fire commissioner of the City of Chicago (Commissioner), appeal a judgment of the circuit court of Cook County vacating an arbitration award regarding the employment of plaintiff Joseph Stahulak, issued pursuant to a collective bargaining agreement (CBA) between the City and defendant Chicago Firefighters Union, Local No. 2, International Association of Firefighters, AFL-CIO-CIC (Union). The Union is not a party to this appeal.

The record on appeal indicates the following facts. The City and the Union are parties to a CBA that governs the terms and conditions of employment of City firefighters.

Prior to hiring Stahulak, the City had conducted a background check of his application. During September 1990, Department personnel went to the address where Stahulak was staying (apparently in Oak Lawn, Illinois) and asked where he lived. The Department informed him that he had to be a City resident. Stahulak attributed his location at that time to ongoing divorce proceedings.

The City hired Stahulak as a firefighter in December 1990. Section 9.1 of the CBA provides in part as follows:

"B. New employees will serve a probationary period of one (1) year. Any employee may be discharged during the probationary period. In such event the employee shall be notified of the reasons for the discharge at least 15 days prior to the effective date of the discharge action. A copy of the notice will be sent to the Union upon request of the Union, the Employer shall meet within 10 days of the discharge notice with a special committee to be designated by the Union to discuss the reasons for the discharge.

The employee and the Union may present evidence relating to the validity of the reasons or mitigating circumstances to the Employer at the meeting. The Employer shall then review such evidence and issue its final opinion. The Employer's final action shall not be subject to the grievance procedure."

Section 16.2 of the CBA provides as follows:

"Section 16.2 Discipline and Discharge

\* \* \*

E. The Employer shall conduct disciplinary investigations when it receives complaints or has reason to believe an employee has failed to fulfill his responsibilities as an employee and just cause for discipline exists \*\*\*.

Prior to taking any final, disciplinary action and concluding its investigation, the Employer shall notify the employee of the contemplated measure of discipline to be imposed, and shall meet with the employee involved and inform him/her of the reasons for such contemplated disciplinary action. Copies of the following documents shall be given to the employee at this notification and review meeting:

1. Allegation of violations of Rules & Regulations
2. Statement of charges and specifications
3. Employee's initial statement of facts
4. Acknowledgment of notification and review
5. Disciplinary officer's recommendation
6. Copies of the employee's pertinent past discipline

The employee shall be entitled to Union representation at such meetings and shall be given the opportunity to rebut the reasons for such proposed discipline."

On October 28, 1991, Edward Altman, the supervising investigator of the internal affairs division of the Department, sent a letter to director of personnel John Tully, regarding an investigation launched in February 1991 and recommending that Stahulak be discharged for violation of the residency requirement.

Assistant director of personnel Charles Stewart delivered to Stahulak a letter notifying him that he would be discharged on November 16, 1991, for violating the City residency requirement. Stewart also read section 9.1 of the CBA to Stahulak at that time. A meeting was held on November 13, 1991, where Stahulak submitted evidence regarding his residency. Stewart also testified and submitted evidence. The decision to discharge Stahulak was affirmed in a memorandum issued the following day. Stahulak was discharged on November 16, 1991.

The Union filed a grievance on behalf of Stahulak and two other

employees[1] that proceeded to arbitration. The issues submitted for arbitration were as follows:

"Did the City violate § 16.2 of the collective agreement by failing to provide the grievants, all of whom were probationary employees, the procedural safeguards, provided therein? If so, what is the remedy?"

The matter was heard by the arbitrator, Alex Elston, on September 25, 1992. The City argued that section 16.2 of the CBA was not applicable to probationary employees. The Union argued that it had been the past practice of the City to afford the protections of section 16.2 to probationary employees.

On January 28, 1993, the arbitrator issued an award sustaining the grievance. However, the arbitrator rejected the Union's argument that the probationary employees should simply be reinstated. Instead, the arbitrator decided that the employees should be reinstated to probationary status for the sole purpose of making the safeguards of section 16.2 available to them, pending final decisions of the Department.

On March 1, 1993, Stahulak was placed on paid administrative leave. Stahulak was again discharged on March 29, 1993.

On May 18, 1993, Stahulak filed a two-count complaint against the defendants in the circuit court of Cook County.[2] Count I petitioned the court to vacate the arbitration award, alleging that the arbitrator exceeded his powers in fashioning the remedy in this case. Count II was a petition for a writ of *certiorari*, alleging that the defendants acted outside the law.

Pretrial proceedings ensued. The parties eventually filed cross-motions for summary judgment. On September 13, 1995, the trial court granted summary judgment in favor of Stahulak. The trial court vacated the arbitrator's award and remanded the matter for arbitration "with court finding that Plaintiff has been an employee over one year." This appeal followed.

■ Summary judgment is properly granted if the pleadings, depositions, and admissions on file, together with any affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Alop v. Edgewood Valley Community Ass'n*, 154 Ill. App. 3d 482, 484, 507 N.E.2d 19, 21 (1987). The purpose of summary judgment is to determine whether a triable question of fact exists. *Seeger v. Canale*, 241 Ill. App. 3d 177, 184, 607 N.E.2d 687, 692 (1993).

---

[1]No issue is raised in this appeal regarding the other employees.

[2]No issue was raised in this case regarding the timeliness of plaintiff's complaint.

■ Initially, the appellants argue that the plaintiff lacked standing to bring this case because the Union did not join in the action and plaintiff failed to allege that the Union breached its duty of fair representation in the underlying proceedings. The appellants contend that allowing individual employees to collaterally attack the Union's resolution of a grievance without alleging a breach of the duty of fair representation will substantially undermine the settlement procedures provided by the CBA and create an incentive to eliminate such procedures. Stahulak responds that the appellants have waived the standing issue in this case.

The record on appeal indicates that appellants raised the standing issue in connection with their motion to dismiss and in connection with the cross-motions for summary judgment. The transcript of proceedings shows that the trial court considered the argument and rejected it. Accordingly, the argument is not waived on appeal.

■ The appellants' argument that plaintiff lacked standing to bring this suit is based on sections 8 and 16 of the Illinois Public Labor Relations Act (Act). See 5 ILCS 315/8, 16 (West 1996). Section 16 of the Act provides that, after an arbitration mandated by a CBA, suits alleging breach of the CBA may be brought by the *parties* to the CBA. See 5 ILCS 315/16 (West 1996). Section 8 of the Act provides that the grievance and arbitration procedures of a CBA under the Act shall be subject to the Illinois Uniform Arbitration Act, which in turn provides that a *party* may move to vacate an arbitration award. See 5 ILCS 315/8, 710 ILCS 5/12 (West 1996). The appellants note that the City and the Union are parties to the CBA, but plaintiff as an individual is not a party. Accordingly, the appellants conclude that plaintiff cannot bring the suit at issue here.

The appellants correctly note that federal law interpreting similar provisions of the Labor Management Relations Act of 1947 (29 U.S.C. §§ 141 through 191 (1994)) (LMRA) establishes that an employee who fails to allege a breach of the duty of fair representation by the union in the underlying proceedings lacks standing to collaterally attack the outcome of grievance procedures. *Shores v. Peabody Coal Co.*, 831 F.2d 1382, 1383-84 (7th Cir. 1987); *Anderson v. Norfolk & Western Ry. Co.*, 773 F.2d 880, 881-82 (7th Cir. 1985) (and cases cited therein); see *Vaca v. Sipes*, 386 U.S. 171, 185-86, 17 L. Ed. 2d 842, 855, 87 S. Ct. 903, 914 (1967).

Plaintiff relies on a decision of the second district of this court, *Svoboda v. Department of Mental Health & Developmental Disabilities*, 162 Ill. App. 3d 366, 515 N.E.2d 446 (1987), which held that a union member has standing to seek to vacate an arbitration award without the burden of alleging and proving a breach of the duty of

fair representation by the union in the underlying proceedings. *Svoboda*, 162 Ill. App. 3d at 371, 515 N.E.2d at 449. However, in a similar context, the first district previously had held that an individual union member was entitled to judicial review only if he could show that the union's conduct in processing a grievance was arbitrary, discriminatory or in bad faith. *Parks v. City of Evanston*, 139 Ill. App. 3d 649, 652, 487 N.E.2d 1091, 1094 (1985). The first district has also held that the complaint of an individual union member alleging wrongful discharge based on a violation of a CBA that failed to allege a breach of the duty of fair representation by the union in the underlying proceedings was legally insufficient. *Consentino v. Price*, 136 Ill. App. 3d 490, 495, 483 N.E.2d 297, 300 (1985).

One district of this court is not always bound to follow the decisions of other districts, although there may be compelling reasons to do so when dealing with similar facts and circumstances. *In re May 1991 Will County Grand Jury*, 152 Ill. 2d 381, 398, 604 N.E.2d 929, 938 (1992). The second district has ruled directly on the standing issue. In so ruling, the second district appears to have been unaware that the first district has decided similar issues in a manner that would suggest a contrary result, though it was not bound to follow them. In the same manner, we turn to the issue of whether *Svoboda* offers compelling reasons for holding that Stahulak has standing in this case.

■ The *Svoboda* court relied primarily on section 6(b) of the Act both to interpret the plain language of section 16 of the Act and to distinguish Illinois law from federal case law. Section 6(b) of the Act provides:

> "Nothing in this Act prevents an employee from presenting a grievance to the employer and having the grievance heard and settled without the intervention of an employee organization; provided that the exclusive bargaining representative is afforded the opportunity to be present at such conference and that any settlement made shall not be inconsistent with the terms of any agreement in effect between the employer and the exclusive bargaining representative." 5 ILCS 315/6(b) (West 1996).

The *Svoboda* court concluded that it was not the legislature's intent to allow suits to vacate an arbitrator's award to be brought by unions that have instituted grievance procedures on behalf of their members, but not suits by members who have brought grievance procedures on behalf of themselves. *Svoboda*, 162 Ill. App. 3d at 369, 515 N.E.2d at 448. The *Svoboda* court also distinguished *Vaca* on the grounds that, given section 6(b) of the Act, the union was "not vested with the sole power to invoke the higher stages of the grievance procedure." *Svoboda*, 162 Ill. App. 3d at 371-72, 515 N.E.2d at 449.

However, as the appellants note in this case, language virtually identical to that of section 6(b) of the Act appears in the LMRA. See 29 U.S.C. § 159(a) (1994). As noted above, federal cases interpreting the LMRA hold that individual union members generally lack standing to collaterally attack grievance proceedings. Moreover, the plain text of section 6(b) demonstrates that the ability of an individual union member to act outside the union in such matters is not absolute. For example, any settlement made without the union must be consistent with the relevant CBA. Perhaps most important for the purposes of this case, nothing in section 6(b) grants individual union members the right to take further action in the event that the grievance is not settled without the intervention of the union.

The CBA at issue here demonstrates how section 6(b) was implemented by the parties to the agreement. The grievance procedure set forth in section 10.2 of the CBA provides for a three-step process. Although an employee may take the first step—initiating a grievance—as an individual, the CBA clearly contemplates that any subsequent steps—including the invocation of arbitration—are to be initiated by the Union in its capacity as a party to the CBA.

In sum, under section 6(b) of the Act and the CBA involved in this case, the Union is vested with the sole power to invoke the higher stages of the grievance process. Accordingly, *Svoboda* does not offer a compelling reason for holding that Stahulak has standing in this case.

The *Svoboda* opinion also discusses federal law and concludes that these cases hold that union employees do have standing in cases such as this, but "encumber" such employees with the burden of alleging and proving fraud, deceit or a breach of the duty of fair representation by the union in the underlying proceedings. See *Svoboda*, 162 Ill. App. 3d at 369-71, 515 N.E.2d at 448-49. However, such a reading of the federal cases overlooks the fact that a suit challenging the quality of a union's representation is far different from the sort of purely collateral attack at issue here. Indeed, under Illinois law, a union's breach of duty of fair representation is an unfair labor practice under the Act, which initially falls under the exclusive jurisdiction of the Illinois State Labor Relations Board, not the circuit court. *Foley v. American Federation of State, County, & Municipal Employees, Council 31, Local No. 2258*, 199 Ill. App. 3d 6, 10, 556 N.E.2d 581, 583 (1990). Accordingly, this aspect of *Svoboda* also does not offer a compelling reason for holding that Stahulak has standing in this case.

The *Svoboda* court ultimately concluded as follows:

"While we are mindful that it is often the case that the individual

employee must give up certain rights to make a union viable, we do not believe that giving up one's ability to protect his or her job is one such right that can or should be given up." *Svoboda*, 162 Ill. App. 3d at 373, 515 N.E.2d at 450.

Such an assertion overlooks the fact that the individual employee's claims in cases such as this one ultimately flow from the Act and the CBA negotiated between the City and the Union.

Historically, an employee was considered to be the servant of the master and could be discharged at any time without cause or notice. See, *e.g., Carter Coal Co. v. Human Rights Comm'n*, 261 Ill. App. 3d 1, 8, 633 N.E.2d 202, 207 (1994). The individual employee did not have a judicially enforceable right to protect his or her job that could be "given up." It is legislation such as the IPLRA that has made inroads into the employment-at-will doctrine, with employees gaining bargaining strength and job security through union representation and the collective bargaining process. See *Carter Coal Co.*, 261 Ill. App. 3d at 8, 633 N.E.2d at 207. Allowing individual unionized employees to collaterally attack their union's resolution of a grievance (including acquiescence in an arbitration award) without showing that the union thereby breached its duty of fair representation would substantially undermine the settlement machinery provided by a CBA, destroy the public employer's confidence in the union's authority and ultimately return employees to the vagaries of independent, unsystematic negotiation. See *Vaca*, 386 U.S. at 191, 17 L. Ed. 2d at 858, 87 S. Ct. at 917. Accordingly, *Svoboda* is not persuasive on this point.

■ In sum, *Svoboda* offers no compelling reason for holding that Stahulak has standing in this case, given the facts and circumstances presented by the record on appeal. In the first district, an individual union member is entitled to judicial review of a grievance proceeding (including arbitration) only if he or she can show that the union's conduct in processing the grievance was arbitrary, discriminatory or in bad faith. See *Parks*, 139 Ill. App. 3d at 652, 487 N.E.2d at 1094. In this case, no such conduct was alleged or shown.

Plaintiff correctly notes, however, that in raising the standing issue, the appellants did not specifically rely on *Parks, Consentino* or the federal cases cited in the appellants' brief. Thus, the standing issue was not presented as squarely as it might have been. Moreover, as in *Svoboda* and *Anderson*, we agree that the plaintiff has suffered an injury. See *Svoboda*, 162 Ill. App. 3d at 368, 515 N.E.2d at 447; *Anderson*, 773 F.2d at 882-83. Given these circumstances, it is not inappropriate to comment briefly on the merits of the dispute. See *Anderson*, 773 F.2d at 882-83.

A court's review of an arbitrator's award is extremely limited. *American Federation of State, County & Municipal Employees, AFL-CIO v. State*, 124 Ill. 2d 246, 254, 529 N.E.2d 534, 537 (1988) (*AFSCME*). A court must construe an award, if possible, as valid. *AFSCME*, 124 Ill. 2d at 254, 529 N.E.2d at 537. The scope of an arbitrator's power generally depends upon what the parties agree to submit to arbitration. *AFSCME*, 124 Ill. 2d at 254, 529 N.E.2d at 537. A public labor arbitration award must be enforced if the arbitrator acts within the scope of his or her authority and the award draws its essence from the CBA. *AFSCME*, 124 Ill. 2d at 254, 529 N.E.2d at 537. An arbitrator is confined to interpretation and application of the CBA and cannot dispense his or her own brand of industrial justice. See *AFSCME*, 124 Ill. 2d at 255, 529 N.E.2d at 538. Nevertheless, within the scope of the CBA, the arbitrator must have flexibility in formulating a remedy to meet a wide variety of situations, as the drafters of a CBA may never have thought of what specific remedy should be awarded to meet a particular contingency. See *AFSCME*, 124 Ill. 2d at 254-55, 529 N.E.2d at 537-38.

In this case, the arbitrator determined that the plaintiff was discharged without receiving procedural protections due him under the CBA, despite the plaintiff's status as a probationary employee. The issue of the remedy for this violation was expressly submitted to the arbitrator. The arbitration award reinstated plaintiff as a probationary employee, in order that he could avail himself of the procedural protections due him under the CBA, including the opportunity to rebut the charge against him.

The purpose of a remedy in contract is to place the injured party in the position he or she would have occupied if the contract had been performed, not a better position. *E.g., O'Neil v. Continental Bank, N.A.*, 278 Ill. App. 3d 327, 662 N.E.2d 489 (1996). The remedy imposed by the arbitration award in this case meets that standard and therefore must be enforced, even where the reviewing court disagrees with the arbitrator's judgment on the merits. *AFSCME*, 124 Ill. 2d at 255, 529 N.E.2d at 538. Accordingly, even if the plaintiff had standing in this case, it would be error to vacate the arbitration award.

As for count II of the complaint, plaintiff sought a writ of *certiorari* on the ground that the defendants did not proceed according to law. However, plaintiff has completely failed to identify what law was not followed by any of the defendants. Rather, plaintiff maintains that the arbitration award violated public policy, a ground not alleged by the plaintiff in the circuit court. The arbitrator was not named as a defendant.

However, assuming *arguendo* that these defects are not fatal to plaintiff's claim, we note that the case law plaintiff cites to argue that the award violates public policy addresses the question of whether an employee's probationary period may be extended retroactively by legislation. In this case, unlike the cases cited by the plaintiff, the discharge proceedings began prior to the end of the probationary period. Unlike the cases cited by the plaintiff, the probationary period was effectively extended as the result of a grievance procedure initiated on plaintiff's behalf. Moreover, the arbitration award, unlike the legislation at issue in the cases cited by the plaintiff, is specifically intended to apply to this plaintiff. This is not a case where the rules were changed in the middle of the game. Furthermore, the cases cited by the plaintiff simply do not establish a general public policy that probationary employment periods can never be extended. Thus, assuming *arguendo* that plaintiff had standing, as a matter of law, plaintiff could not have established a claim for a writ of *certiorari*.

For all of the aforementioned reasons, the judgment of the circuit court of Cook County is reversed; the case is remanded with instructions to dismiss the complaint.

Reversed and remanded.

BUCKLEY and GALLAGHER, JJ., concur.